UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NORMAN SCOTT GUNN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-2635-B |
| | § | |
| LANE GORMAN TRUBITT, LLC and | § | |
| LGT FINANCIAL ADVISORS, LLC, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendants Lane Gorman Trubitt, LLC ("LGT CPA") and LGT Financial Advisors, LLC ("LGT FA") (collectively, "Defendants")'s Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. 19). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

I.

**BACKGROUND**

This is an employment dispute. Plaintiff Norman Scott Gunn started working for LGT FA in 2009. Doc. 18, Am. Compl., ¶ 15. He began as an investment advisor and later worked in various management roles and as an income—or "non-equity"—partner of LGT CPA. *Id.* ¶¶ 15, 17, 23. LGT FA and LGT CPA share common management, facilities, and owners. *Id.* ¶ 9.

Gunn was the only Black employee in management during his time at LGT FA. *Id.* ¶ 19. He was also the only partner who was not a certified public accountant ("CPA"). *Id.* The other partners "were mostly white and all CPAs." *Id.* The company never had more than five Black employees at a time, and each Black employee did not stay long before leaving or getting fired. *Id.* ¶ 20.

-1-

Gunn did not become an income partner until six years into his tenure, but it took white principals "significantly less" time to receive such a promotion. *Id.* ¶ 21. And Gunn was placed on a one-year probationary period as a partner, while his white counterparts were not. *Id.* ¶ 23. When Gunn became an income partner in LGT CPA,[1] he received a ten percent equity interest in LGT FA. *Id.* Despite his credentials and experience, Gunn was "often challenged by his supervisors and peers." *Id.* at ¶ 24. As a partner, Gunn needed management approval to hire staff or have a discretionary budget. *Id.* ¶ 26. But his white counterparts had authority to use a discretionary budget. *Id.*

In 2019, Gunn proposed buying an additional 40 percent equity interest in LGT FA to LGT FA's managing partner, which would increase Gunn's total interest to 50 percent ownership. *Id.* ¶¶ 27, 29. Gunn thought he would become an equity partner based on his dealings with the partnership over the next three years. *Id.* ¶¶ 30–34. Near the end of 2020, the managing partner told Gunn that LGT CPA's policy committee favored his purchase proposal, but all equity partners would need to vote to approve it. *Id.* ¶ 31. Gunn and Defendants then exchanged drafts of a proposed Operating Agreement. *Id.* ¶¶ 31–32. This Operating Agreement, which governed LGT FA and Gunn, was more restrictive than the Operating Agreement that governed LGT CPA and its partners. *Id.* ¶ 32.

In January 2021, LGT CPA's equity partners "tabled" Gunn's purchase proposal. *Id.* ¶ 33. The committee later rejected the proposal in February 2022. *Id.* ¶ 34.

---

[1] Gunn's Complaint states that he became an income partner in LGT CPA. *Id.* It is unclear if Gunn intended to allege that he was an income partner in LGT FA instead, but this does not bear on the Court's analysis.

But effective January 2021, Gunn and Defendants had reached a separate agreement for his compensation to include 50 percent of LGT FA's net profits. *Id.* ¶ 47. Gunn did not receive these payments. *Id.* ¶ 49.

During the same timespan, two senior partners of LGT CPA planned to retire and transferred their LGT FA clients to two white, junior financial advisors with less experience than Gunn. *Id.* ¶ 36. Gunn had managed the senior partners' clients before they were transferred to the junior advisors. *Id.* After this, he perceived a change in the attitude of LGT FA staff towards him, finding them to be hostile and at times insubordinate. *Id.* ¶ 43.

In June and July 2022, Gunn expressed concerns to LGT CPA's managing partners about how Defendants rejected his proposal to buy more equity in the company and failed to pay him his 50 percent share of LGT FA's profits. *Id.* ¶ 38. He also expressed concerns about how the senior partners transferred their clients "to inexperienced white junior advisors" and how his staff was treating him. *Id.* And in his June 2022 meeting, he said "he was being treated differently than his counterparts." *Id.* LGT did not act to address these concerns. *Id.*

Defendants fired Gunn in a letter on September 29, 2022. *Id.* ¶ 45 n.2.[2] In this notice of termination, Defendants required him to surrender his ten percent ownership of LGT FA for the price of the amount in Gunn's capital account, which was zero. *Id.* ¶ 54. In other words, Gunn returned his equity without receiving any payment in return. Defendants required him to return his equity under Article 1 of the Member Agreement, which requires two named partners to surrender their ownership if the company elected to buy their interests in it. *Id.* ¶ 52. And even in the years

---

[2] He received a subsequent "offer" to resign. *Id.*

before Gunn left the company, Defendants did not pay Gunn his ten percent ownership interest. *Id.* ¶¶ 49–50.

Gunn brings nine claims. In his first and fourth counts, he sues for discrimination, under Title VII, 42 U.S.C. §§ 2000e *et seq*, and 42 U.S.C. § 1981. *Id.* ¶¶ 59–61, 69–71. In his second and fifth claims, he sues for hostile work environment and harassment, under Title VII and § 1981. *Id.* ¶¶ 62–64, 72–75. In his third and sixth claims, he sues for retaliation, in violation of Title VII and § 1981. *Id.* ¶¶ 65–68, 76–80. He sues for declaratory judgment in his seventh claim under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202. *Id.* ¶¶ 81–84. And in his eighth and ninth claims, he brings breach of contract actions under Texas law. *Id.* ¶¶ 85–98. Defendants move to dismiss each of these claims under Rules 12(b)(1) and 12(b)(6). *See* Doc. 19, Mot., 2. The Court considers the Motion below.

## II.

## LEGAL STANDARDS

A.    *Subject Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). Courts must therefore "presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). A defendant may challenge jurisdiction, including standing, in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017). When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction to hear the case. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court should grant a Rule

12(b)(1) dismissal motion "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

B.    *Failure to State a Claim*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "But a court may consider extrinsic documentary evidence if (1) the document is attached to a defendant's motion to dismiss, (2) the document is referred to in the plaintiff's complaint, and (3) the document is 'central' to the plaintiff's claim." *Andrade v. Teichroeb*, 341 F. Supp. 3d 681, 685 (N.D. Tex. 2018) (Cummings, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting

*Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotations omitted).

## III.

## ANALYSIS

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. Gunn's second and third claims for a hostile work environment and retaliation under Title VII are **DISMISSED WITH PREJUDICE**. Gunn's first and fourth claims of racial discrimination and his fifth claim for hostile work environment under § 1981 are **DISMISSED WITHOUT PREJUDICE**. Gunn's sixth, seventh, eighth, and ninth claims for retaliation under § 1981, declaratory judgment, and breach of contract survive.

A.    *The Court Dismisses Gunn's Title VII Hostile Work Environment and Retaliation Claims.*

The Court grants Defendants' Motion to Dismiss Gunn's Title VII claims for Hostile Work Environment and Retaliation (his respective second and third claims) and dismisses them with prejudice. Before a plaintiff files a claim under Title VII, he must file a discrimination charge with the EEOC. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019). The exhaustion requirement is not jurisdictional, "but rather a prudential prerequisite to suit." *Id.* at 305. To determine whether a plaintiff's EEOC charge has exhausted his Title VII claim, courts "construe the EEOC charge in its broadest reasonable sense and ask whether the claim can reasonably be expected to grow out of the charge of discrimination." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018) (quotations omitted). The charge does not require "verbal precision and finesse," but "a Title VII lawsuit can include only those allegations that are like or related to those allegations contained in the EEOC charge." *Id.* To

determine whether a plaintiff exhausted his claims, courts look to the EEOC charge.[3] *See, e.g., Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

    1.    <u>Gunn Failed to Exhaust His Hostile Work Environment Claim.</u>

Gunn did not exhaust his Title VII hostile work claim. Even construing Gunn's charge in its broadest reasonable sense, a hostile work environment claim cannot "reasonably be expected to grow out of [his] charge of discrimination." *Davenport*, 891 F.3d at 167. "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019) (quotations omitted). "Employees must allege more than discrete acts of discrimination for their EEOC charge to support a hostile work environment claim." *Haferbier v. IMER USA, Inc.*, No. 4:24-CV-00315-P, 2024 WL 3094616, at *4 (N.D. Tex. June 20, 2024) (Pittman, J.) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).

Gunn's EEOC charge neither explicitly raises a hostile work environment claim nor alleges facts that would create a reasonable expectation that he would raise such a claim. *See* Doc. 20-1, Ex. 1. Gunn's EEOC charge alleges that while he had "exemplary results" and "received very good to superior evaluations," he "was terminated because [he] had sought to become an equity partner." *Id.* This allegation does not support a hostile work environment because it simply states alleged grounds for his termination, rather than allege a pervasive condition that altered Gunn's employment. *See*

---

[3] A court considering a motion to dismiss "may consider extrinsic documentary evidence if (1) the document is attached to a defendant's motion to dismiss, (2) the document is referred to in the plaintiff's complaint, and (3) the document is 'central' to the plaintiff's claim." *Andrade*, 341 F. Supp. 3d at 685. Here, Defendants attach the EEOC charge to their Motion to Dismiss; *see* Doc. 20-1, Ex. 1; Gunn mentions the charge in his Complaint; Doc. 18, Am. Compl., ¶ 13; and it is central to his claim because his Title VII claims depend on the existence and nature of his EEOC charge.

*Johnson*, 916 F.3d at 417. His EEOC charge also alleges that his "white counterparts . . . were promoted to equity partner . . . while [he] was not," and that "two retiring partners . . . transferred their clients' investment accounts to two . . . white inexperienced financial advisors . . . instead of [him]." Doc. 20-1, Ex. 1. "These discrete acts are insufficient for a claim of hostile work environment to reasonably be expected to grow out of the EEOC charge." *Haferbier*, 2024 WL 3094616, at *4.

    2.    <u>Gunn Failed to Exhaust His Retaliation Claim.</u>

    Gunn also failed to exhaust his retaliation claim. To bring a Title VII retaliation claim, a plaintiff must show that "1) [he] engaged in protected activity, 2) [he] suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).

    There is no reasonable expectation that a retaliation claim would arise from Gunn's EEOC charge. *See Davenport*, 891 F.3d at 167. While his charge mentions that he was terminated "in retaliation for exercising [his] protected rights," he does not discuss any facts to support this. Doc. 20-1, Ex. 1. The "protected rights" he alleges were seeking "to become an equity partner" and reporting a possible SEC violation. *Id.* Neither of these are protected activities under Title VII. *See* 42 U.S.C. § 12203(a) (prohibiting discrimination because an employee "opposed any act or practice made unlawful by this chapter," which does not protect seeking promotions or reporting SEC violations). *Compare LaRocca v. Alvin Indep. Sch. Dist.*, No. 21-40043, 2022 WL 1001442, at *3 (5th Cir. Apr. 4, 2022) (finding a plaintiff exhausted her administrative remedies for her retaliation claim because her EEOC charge alleged she filed a formal grievance for sexual harassment and checked the "retaliation" box) *with Barnes v. Rite-Aid*, No. CIV.A. 09-6629, 2010 WL 4553493, at *3 (E.D. La. Oct. 28, 2010) (finding a plaintiff failed to exhaust his retaliation claim because his charge

"contain[ed] no allegations that Plaintiff complained or engaged in any other conduct sufficient to alert the EEOC to look for retaliation" when it asserted that plaintiff's manager said some stores "were not suitable for a young Black man," that plaintiff was later written up for incidents that were not his fault, that he refused to sign the write up, and that he was eventually laid off).

Although Gunn's Amended Complaint alleges that he complained to Defendants about his alleged discrimination, he did not exhaust his retaliation claim because he failed to mention it in his EEOC charge. *See* Doc. 18, Am. Compl., ¶ 38; *see also Chhim v. University of Texas at Austin*, 836 F.3d 467, 472 (5th Cir. 2016).

Therefore, Defendants' Motion to Dismiss Gunn's Title VII retaliation and hostile work environment claims is **GRANTED**. To the extent the deadline to file an EEOC charge has passed, these claims are **DISMISSED** with prejudice, because leave to amend would be futile if Gunn cannot exhaust his Title VII claims. *See Bunker v. Down Chem. Co.*, 111 F.4th 683, 688 (5th Cir. 2024) (affirming a dismissal with prejudice when a plaintiff failed to exhaust her administrative remedies and it was too late to cure the defect).

B.    *The Court Dismisses Gunn's Title VII and § 1981 Discrimination Claims.*

The Court Grants Defendants' Motion to Dismiss Gunn's first and fourth claims of racial discrimination under Title VII and § 1981. "The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2024).

A plaintiff can establish a discrimination claim by showing disparate treatment based on their protected class. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). To survive a Rule 12(b)(6) motion to dismiss, "a plaintiff need not make out a prima facie case of

discrimination." *Id.* (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)) (alterations omitted). Instead, a plaintiff must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim*, 836 F.3d at 470. The ultimate elements of a disparate treatment claim are "(1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese*, 924 F.3d at 767 (internal quotations omitted). To plead the first element, a plaintiff need only plausibly allege "discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502–03 (5th Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). To plead the second element, the plaintiff must allege facts that suggest the employer's actions were based on the plaintiff's race or that the employer "treated similarly situated employees of other races . . . more favorably." *Raj*, 714 F.3d at 331.

Gunn does not allege a plausible discrimination claim. Gunn alleges various adverse employment actions or instances of disparate treatment, but he fails to allege that any instances occurred *because of* his race. Gunn argues that he was terminated, which is an adverse employment action. *See Hamilton*, 79 4th at 502; Doc. 18, Am. Compl., ¶ 45 n.2; Doc. 20, Def.'s Br., 4. He also argues that it took him longer to become an income partner than it took his white counterparts and, once promoted, he "was subject to a one-year probationary period, unlike his white counterparts. Doc. 18, Am. Compl., ¶¶ 21–23.[4] Furthermore, Gunn alleges that his supervisors and peers "doubted his abilities and credentials." *Id.* ¶ 24. He contends he was not afforded the same level of

---

[4] Defendants argue that any claims alleged before May 31, 2022 are barred under Title VII's statute of limitations, but they do not take issue with claims raised under § 1981, so the Court considers such allegations under Gunn's § 1981 claim. *See Taylor v. Lear Corp.*, No. 3:16-CV-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) (Fitzwater, J.) ("To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the 'successful affirmative defense [must] appear[ ] clearly on the face of the pleadings.").

authority as other practice leaders, "all of whom were white," *id.* ¶ 25, noting he "could not hire staff or have a discretionary budget without management approval while his white counterparts had discretionary budget authority." *Id.* ¶ 26. And Gunn alleges that document drafts of an Operating Agreement that would govern Gunn's ownership of more of LGT FA "were far more restrictive" than was the LGT CPA Operating Agreement governing Gunn's counterparts. Doc. 18, Am. Compl., ¶ 32.

These allegations are not enough to survive a motion to dismiss because Gunn fails to allege facts to support that any adverse employment actions or disparate treatment were *because of* his race. *Cf. Body by Cook, Inc*, 869 F.3d at 387. He alleges that his longer promotion timeline "was not based on any objective criteria, but rather on Defendants' discriminatory practices that favored white employees over employees of color," but alleges no facts to support such practices. *Id.* ¶ 22. Furthermore, before any allegations of adverse employment actions, he alleges that he was "the only partner who was not a certified public accountant (CPA) and there was a constant undertone that he was not considered an 'equal' partner by other partners, who were mostly white and all CPAs." *Id.* ¶ 19. While this may be unfair, this allegation suggests an alternative explanation for unequal treatment towards him: that he was not a CPA. Finally, an operating agreement governing LGT FA could reasonably differ from the agreement governing LGT CPA because Gunn concedes that they are different entities. *See generally* Doc. 18, Am. Compl.

Gunn's remaining allegations "are not specific enough to plead discriminatory intent" because "[t]hey fail to identify . . . specific instances when" he was treated adversely but a similarly situated, non-Black employee, was not. *See Body by Cook, Inc.*, 869 F.3d at 387. For example, he alleges that two retiring partners transferred their clients, whom Gunn had previously helped

manage, "to two junior, relatively inexperienced advisors, both of whom were white." *Id.* ¶ 36. He argues that because Defendants allowed this transfer of clients, Defendants' staff "changed drastically and became hostile toward" Gunn and "rendered [him] unable to effectively manage LGT FA." *Id.* ¶¶ 43–44. These allegations fail because Gunn states no facts about whether the retiring partners transferred clients whom non-Black employes had managed.

Gunn also alleges that he was the only Black employee in management during his 14-year tenure and that there were never more than five Black employees at the same time, and those hired did not stay long before leaving or getting fired. *Id.* ¶¶ 19–20. But he does not allege how long other, non-Black employees continued working for Defendants or how many non-Black employees were in management.

Therefore, his discrimination claims fail. *See Hendrix v. iQor Inc.*, No. 3:20-CV-0437-N-BT, 2021 WL 3040776, at *5 (N.D. Tex. June 7, 2021) (Rutherford, M.J.), *report and recommendation adopted*, No. 3:20-CV-00437-N-BT, 2021 WL 3036949 (N.D. Tex. July 19, 2021) (Godbey, J.) (dismissing the plaintiff's discrimination claim because "she does not identify particular employees or describe specific situations involving similarly situated non-African American employees, who were treated more favorably" or "plead any facts indicating that [her employer] terminated her employment because of her race"). Accordingly, Gunn's discrimination claims are **DISMISSED** without prejudice. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).

C.    *The Court Dismisses Gunn's § 1981 Hostile Work Environment Claim.*

The Court grants Defendants' Motion to Dismiss Gunn's fifth claim for hostile work environment claim under § 1981. To state a claim for a hostile work environment under § 1981, Gunn must allege:

(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the claimed harassment was based on the protected characteristic; (4) the claimed harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Sanchez v. Chevron N. Am. Expl. & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *6 (5th Cir. Nov. 24, 2021) (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)); *see also Frank v. Xerox Corp.*, 347 F.3d 130, 137–38 (5th Cir. 2003) (considering plaintiffs' hostile work environment claims under Title VII and § 1981 under the same analysis).

"Harassment generally takes the form of discriminatory intimidation, ridicule, and insult that rises to the level of hostile or abusive." *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 509 (5th Cir. 2024) (quotations omitted). The harassment "must be sufficiently severe or pervasive such that it alters the conditions of the victim's employment and creates an abusive environment" that is "objectively and subjectively hostile to the victim of racial discrimination." *Id.*

Gunn fails to allege a hostile work environment. Gunn alleges that "there was a constant undertone that he was not considered an 'equal' partner" because he lacked a CPA certification, that his peers and supervisors challenged him and doubted his abilities and credentials "based on his race," and that Defendants' staff "changed drastically and became hostile" towards him, "including insubordination and refusal to follow his directives." Doc. 18, Am. Compl., ¶¶ 19, 24, 43. In his Response, he argues that Defendants allowed this hostile environment, which was created because of Gunn's race, by promoting him later than his white counterparts, placing him on a probationary period that his white counterparts were not placed on, not affording him the same authority as white practice leaders, and challenging him. Doc. 22, Pl.'s Resp., 11–12 (citing Amended Complaint).

These claims fail to allege conduct that is sufficiently severe, pervasive, or frequent to constitute a hostile work environment. *See France v. Lockheed Martin Corp.*, No. 4:18-CV-317-Y, 2018 WL 10561526, at *4 (N.D. Tex. Oct. 10, 2018) (Means, J.) (dismissing a hostile work environment claim that alleged general "hostility and contempt" towards plaintiff and one racially derogatory remark made by a co-worker). Furthermore, as discussed in the previous section, Gunn failed to offer any facts alleging that the conduct occurred because of Gunn's race. *See id.* Therefore, Gunn's fifth claim is **DISMISSED** without prejudice. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

D.    *Gunn Plausibly Alleges Retaliation Under § 1981.*

Next, the Court denies the Motion to Dismiss Gunn's sixth claim for retaliation under § 1981. "To assert a successful § 1981 retaliation claim, [Gunn] must show (1) that [he] engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection between the protected activities and the adverse action." *White Glove Staffing, Inc. v. Methodist Hosps. of Dall.*, 947 F.3d 301, 308 (5th Cir. 2020). A protected activity includes "oppos[ing] any practice made unlawful by [Title VII]." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), as revised (Nov. 26, 2021) (quoting 42 U.S.C. § 2000e-3(a)). The plaintiff need only reasonably believe that the practice he opposed is unlawful. *Id.* at 1210. To result in § 1981 retaliation, an employee's opposition "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010).

Gunn sufficiently alleged a retaliation claim under § 1981. Gunn's complaint about possible SEC non-compliance is not a protected activity under § 1981. *See* 42 U.S.C. § 12203(a) (prohibiting discrimination because an employee "opposed any act or practice made unlawful by this chapter,"

which does not protect seeking promotions or reporting SEC violations). But Gunn also alleges that he complained to LGT CPA's managing partner "of senior partners of Defendants transferring their books of business to inexperienced white junior advisors, and the harassing and/or insubordinate treatment by his staff;" that "he was being treated differently than his counterparts;" and that the managing partner knew that all of Gunn's counterparts were white and Gunn was Black. Doc. 18, Am. Compl., ¶ 38. Although the question is close, the Court finds that Gunn alleges a protected activity because he reasonably believed that his employer engaged in an unlawful act and complained of the act. *See Scott*, 16 F.4th at 1210. To determine "whether an employee's belief that his employer engaged in an unlawful act was reasonable, the question is whether a person, not instructed on Title VII law as a jury would be, could reasonably believe that she was providing information about a Title VII violation." *Id.* at 1211 (quotations omitted).

Even if Gunn's claims to his employers would not survive a motion to dismiss a discrimination claim, a person without instructions on Title VII law would likely believe that Gunn raised a possible Title VII violation to his employer. Gunn complained that white junior employees received clients that he had managed, and he alleges Defendants know he is Black. Doc. 18, Am. Compl., ¶ 38. And he complained that this resulted in harassment and insubordination towards him, and that he, whom Defendants know is Black, was subject to different treatment than his white counterparts, whom the manager knew were all white. *Id.* Absent instructions on the law, the Court finds it is reasonable, even if incorrect, for Gunn to believe at the time that this could violate Title VII. Defendants argue that Gunn never complained that any of the treatment he complained of was because of his race. *See* Doc. 20, Def.'s Br., 9. But Gunn alleges that he mentioned the transfer of

clients to younger, white employees. Doc. 18, Am. Compl., ¶ 38. Therefore, the Court finds Gunn reasonably believed that he complained of a Title VII violation.

Gunn also sufficiently alleged an adverse employment action was taken against him because of his protected activity. Gunn alleges that after he complained on June 27 and July 7, 2022, he was fired on September 29, 2022. *Id.* ¶¶ 38, 45 n.2. His termination was an adverse employment action and took place slightly over two-and-a-half months after his complaint. The Fifth Circuit has "held that a period of two-and-a-half months," is "close enough to show a causal connection." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020). The Court finds that five days more than two-and-a-half months is sufficient. Accordingly, the Court **DENIES** Defendants' Motion to dismiss Gunn's sixth claim for § 1981 retaliation.

E.    *Gunn Plausibly Alleges a Declaratory Judgment Claim.*

Next, the Court finds Gunn plausibly alleged his seventh claim for declaratory judgment. Gunn seeks a declaration that he maintains a ten percent membership interest in LGT FA and is not subject to an agreement that would dispose of this interest upon his termination. Doc. 18, Am. Compl., ¶ 84. In deciding whether to dismiss a declaratory judgment claim, courts must determine: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003).

1.    Gunn's Declaratory Judgment Claim Is Justiciable.

First, Gunn's declaratory judgment claim is justiciable. To plead a justiciable declaratory judgment action, plaintiffs must allege an "actual controversy exists between the parties." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The "actual controversy" requirement is the

same as the requirement that a plaintiff plead a "case or controversy" to establish standing under Article III of the Constitution. *See id.* at 896. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). But declaratory relief for past wrongs is also possible, if a plaintiff "demonstrate[s] either continuing harm or a real and immediate threat of repeated injury in the future." *Id.*

Gunn presents an actual case or controversy. Gunn's eighth claim asserts that Defendants breached the Member Agreement by failing to pay Gunn ten percent of LGT FA's net profits and later taking Gunn's ten percent membership interest when he left the company. Doc. 18, Am. Compl., ¶¶ 46, 87. Defendants have appeared to dispute these claims. *See* Doc. 19, Mot., 2. The Court thus finds an actual case or controversy exists on Gunn's eighth claim. Even though the wrong that Gunn alleges happened in the past, he alleges a continuing harm because, assuming that Defendants wrongfully took his ten percent ownership, Gunn would be continuing to lose the ten percent net profits to which he is entitled. Doc. 18, Am. Compl., ¶¶ 56, 58, 82.

2.    The Court Has Authority to Grant Relief.

Next, Gunn plausibly alleges that the Court has authority to grant him declaratory relief. The Fifth Circuit has found a district court had such authority when it had subject-matter jurisdiction over the case "and the Anti-Injunction Act did not apply." *Sherwin-Williams Co.* 343 F.3d at 387. As the Court will discuss below, the Court has subject-matter jurisdiction over Gunn's contract claims. And the Court finds no reason that the Anti-Injunction Act applies. Thus, the

Court has authority to grant relief.

    <u>3.</u>    <u>The Court Finds It Appropriate to Exercise Jurisdiction Over Gunn's Claim.</u>

Finally, it is appropriate for the Court to exercise jurisdiction over Gunn's declaratory judgment claim. While the Fifth Circuit has adopted seven nonexclusive factors to determine whether the court should accept or decline jurisdiction over a declaratory judgment suit, these factors encompass three major questions. *See Sherwin-Williams Co.*, 343 F.3d at 390. These questions include the proper allocation of decision-making between state and federal courts, fairness, and efficiency. *Id.* at 390–91.

Here, the Court is unaware of any related pending state court actions, and the Court is exercising jurisdiction over Gunn's state claims. Therefore, accepting jurisdiction over Gunn's declaratory judgment claim does not offend the proper allocation of decision-making between state and federal courts. *See id.* Fairness also supports the Court's jurisdiction here because Gunn brought his declaratory judgment claim not to engage in forum shopping or procedural fencing, but because it is related to other related claims over which the Court has jurisdiction. *See id.* at 390. And because of Gunn's multiple, related claims before this Court, efficiency supports the Court's exercise of jurisdiction. *See id.* Therefore, the Court finds it appropriate to exercise jurisdiction over Gunn's declaratory judgment claim and **DENIES** Defendants' Motion as to Gunn's seventh claim.

F.    *The Court Grants in Part and Denies in Part Defendants' Motion to Dismiss Gunn's Contract Claims.*

The Court denies Defendants' Motion to Dismiss count eight and grants their Motion to Dismiss count nine. Courts have discretion to exercise jurisdiction over state law claims if "(1) federal question jurisdiction is proper, and (2) the state-law claims derive from a common nucleus of operative facts." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 221 (5th Cir. 2012). Defendants do not

argue that the Court lacks jurisdiction over Gunn's state law contract claims.[5] *See* Doc. 20, Defs.' Br., 11–13. Nor do they contend that federal question jurisdiction over Gunn's federal claims is improper. Therefore, because the events giving rise to the state contract and federal claims spanned the same relationship and period of time, the Court finds it proper to exercise jurisdiction here. *See Bella v. Davis*, 531 F. App'x 457, 459 (5th Cir. 2013).

Gunn brings two contract claims under Texas law. To plead a Texas breach of contract claim, a plaintiff must allege: "(1) a valid contract, (2) plaintiff's performance, (3) defendant's breach, and (4) resulting damages." *Taylor v. Root Ins. Co.*, 109 F.4th 806, 809 (5th Cir. 2024) (quotations omitted). And to show that a valid contract existed, "the plaintiff must show: '(1) an offer was made; (2) the other party accepted . . . ; (3) the parties had a meeting of the minds . . . ; (4) each party consented . . . ; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding.'" *Box v. PetroTel, Inc.*, 33 F.4th 195, 202 (5th Cir. 2022) (quoting *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018)).

1.     Gunn Plausibly Alleges a Breach of Contract Claim in Count Eight.

First, Gunn's eighth claim plausibly alleges a breach of contract. Gunn alleges a valid contract—an element Defendants do not dispute. Gunn alleges that he was a ten percent member of LGT FA and that LGT FA's Member Agreement reflected his ten percent membership, which entitled him to ten percent of the net profits. Doc. 18, Am. Compl., ¶ 46; *see also* TEX. BUS. ORGS. § 101.052(1). He alleges that the Member Agreement governs LGT FA, and as a member of LGT FA, he is a party to the Member Agreement. Doc. 18, Am. Compl., ¶¶ 46, 51, 86. Next, he alleges

---

[5] Defendants argue that the Court would lack jurisdiction over Gunn's state law claims if his federal claims were dismissed. Doc. 23, Reply, 7. This is not at issue because federal claims remain, and the Court could exercise supplemental jurisdiction in any event. *See GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 491 (5th Cir. 2016).

he performed under the contract because he continued working as a member of LGT FA. *See id.*
¶¶ 46, 88. And he contends Defendants breached because they (1) failed to pay him ten percent of
the net profits of LGT FA from 2016 through 2022 and (2) took his ten percent membership
interest, for which the Member Agreement did not provide. *Id.* ¶¶ 46, 49, 87. Finally, he claims he
has suffered damages of the value of his ten percent membership interest and estimates his losses.
*Id.* ¶¶ 49, 89.

Defendants argue that Gunn has failed to allege this breach of contract claim because he
himself admits he is not a party to the contract. Doc. 20, Def.'s Br., 18. This argument misconstrues
the Complaint. Gunn alleges only that Article 1 of the Member Agreement does not apply to him
because it allows the company to purchase the membership interests of two specific members,
neither of which are Gunn, for the amount contained in those members' capital accounts. Doc. 18,
Am. Compl., ¶¶ 52–53. Defendants also argue that Gunn admits that the Member Agreement was
never amended to include him as a party. Doc. 23, Def.'s Reply, 8. But Gunn only says Article 1
does not apply to him because it does not name him, and the Agreement was not amended to change
its application. Doc. 18, Am. Compl., ¶ 55. Therefore, Defendants' argument fails. Gunn contends
that Article 1 of the Member Agreement does not apply to him, but he alleges that he is a party to
the Agreement as a whole. *Id.* ¶ 86. Accordingly, Defendants' Motion is **DENIED** as to Gunn's
eighth claim.

2.    Gunn Plausibly Alleges a Contract Claim in Count Nine.

Second, Gunn's ninth claim plausibly alleges a breach of contract. Gunn alleges two
potential agreements in which he was to have some form of a right to 50 percent of LGT FA. In the
first alleged agreement, Gunn contends that he sought to buy an additional 40 percent share of LGT

FA, which would give him a total of 50 percent ownership in LGT FA. *Id.* ¶¶ 29, 31. In the second alleged agreement, Gunn claims that he and LGT FA "reached an agreement" under which his compensation would include 50 percent of LGT FA's net profits. *Id.* ¶¶ 47–48. Gunn's claim as to the first agreement is dismissed without prejudice. *See Jacobsen*, 133 F.3d at 318. His claim as to the second agreement survives.

i.    *Gunn Fails to State a Claim as to His First Alleged Agreement.*

Gunn fails to allege that his first alleged agreement—to purchase 50 percent of LGT FA—was a valid contract. Gunn discusses the proposal he made but never alleges that Defendants agreed. *See* Doc. 18, Am. Compl., ¶¶ 27–29, 31, 33–34. Gunn's proposal ended, he alleges, by being rejected. *Id.* ¶¶ 33–34. He contends that Defendants agreed to submit Gunn's equity purchase to a vote of the equity partners. *Id.* ¶ 31. But agreeing to potentially agree, without a final assent, is not a valid contract. *See Crisp Analytical Lab, L.L.C. v. Jakalam Props., Ltd.*, 422 S.W.3d 85, 89 (Tex. App. —Dall. [5th Dist.] 2014, pet. denied) (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 847 (Tex. 2000)). Accordingly, Gunn's contract claim as to this alleged agreement is dismissed without prejudice. *See Schiller*, 342 F.3d at 566.

ii.    *Gunn's Claim as to His Second Alleged Agreement Survives.*

Gunn's second alleged agreement survives. Gunn claims that he and LGT FA established a written agreement—memorialized in emails—entitling him to 50 percent of LGT FA's net profits as compensation. Doc. 18, Am. Compl., ¶¶ 47–48; *see also Villalobos v. Hudson Ins. Co.*, No. PE:22-CV-00010-DC-DF, 2022 WL 4594029, at *16 (W.D. Tex. Sept. 29, 2022) (finding the parties' emails constituted a contract because they evinced "an intent to be bound and . . . contain[ed] all material terms"), *report and recommendation adopted*, No. PE:22-CV-00010-DC, 2022 WL 17816295 (W.D.

Tex. Oct. 20, 2022). By alleging that he and LGT FA established a written agreement entitling him to 50 percent of net profits, Gunn alleges facts sufficient for the Court to draw the reasonable inference that an offer and acceptance were made, both parties consented, and they intended for it to bind them. *See Box*, 33 F.4th at 202.

Defendants argue that Gunn's two contract claims regarding some form of a 50 percent entitlement in LGT FA were the same agreement. *See* Doc. 23, Reply, 7–8. This is a question of fact not appropriate at this stage. At this stage, Gunn alleges two separate agreements, *see* Doc. 18, Am. Compl., ¶¶ 29, 31, 47–48, at least one of which is plausibly an enforceable contract, and the Court must accept this well pleaded fact as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Gunn plausibly alleges the remaining elements of a breach of contract claim as to the second alleged agreement. He alleges that he performed under the contract by performing his duties as an employee of LGT FA. Doc. 18, Am. Compl., ¶ 47. And he claims that "LGT FA failed and refused to pay [Gunn] 50 percent of the net profits" under their agreement. *Id.* Furthermore, he provides a detailed list of damages resulting from Defendants' alleged breach by listing the amount he was underpaid in the years during which the agreement would have been effective. *Id.* ¶ 49. Therefore, Gunn plausibly alleges a breach of contract claim as to the second agreement.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion as to Gunn's ninth claim. The Court **GRANTS** Defendants' Motion as to Gunn's contract claim for the first alleged agreement, which is **DISMISSED** without prejudice. *See Jacobsen*, 133 F.3d at 318. The Court **DENIES** Defendants' Motion to dismiss Gunn's ninth claim as to the second alleged agreement.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Doc. 19). Defendants' Motion to Dismiss Gunn's second and third claims for a hostile work environment and retaliation under Title VII is **GRANTED**, and the claims are **DISMISSED WITH PREJUDICE**. The Motion to Dismiss Gunn's first and fourth claims of racial discrimination and his fifth claim for hostile work environment under § 1981 is **GRANTED**, and the claims are **DISMISSED WITHOUT PREJUDICE**. Finally, the Motion to Dismiss Gunn's sixth, seventh, eighth, and ninth claims for retaliation under § 1981, declaratory judgment, and breach of contract, respectively, is **DENIED**. Should Gunn elect to file an amended complaint, he must do so on or before **WEDNESDAY, February 12, 2025**.

SO ORDERED.

SIGNED: January 22, 2025.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE